IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JORGE ALVAREZ-VALENCIA,

                Petitioner,            OPINION AND ORDER

v.

                                  16-cv-816-wmc

LIZZIE TEGELS,

                Respondent.

---

State inmate Jorge Alvarez-Valencia has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction for one count of kidnapping. Petitioner contends that the state trial court violated his rights under *Crawford v. Washington*, 541 U.S. 36 (2004), when it allowed the state to introduce statements made by the victim to a sexual assault nurse examiner. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this court is constrained to find that admission of these statements, testimonial or not, did not have a substantial and injurious effect on the verdict, and the petition must be denied.

BACKGROUND[1]

In Dane County Case No. 2011CF1933, Alvarez-Valencia was charged with kidnapping, second-degree sexual assault, strangulation and suffocation, and second-degree recklessly endangering safety. The charges stemmed from allegations that on October 2, 2011, Alvarez-Valencia assaulted his wife, G.Z.C., in a Dollar Store parking lot and

---

[1] The following facts are drawn from the record of the state court proceedings and from the Wisconsin Court of Appeals decision on Alvarez-Valencia's direct appeal, *State v. Alvarez-Valencia*, 2013AP2657 (Wis. Ct. App. June 8, 2015) (dkt. # 8-5).

transported her against her will to the University of Wisconsin Arboretum, where he beat, choked, and sexually assaulted her. G.Z.C. reported the crime to police on October 4, 2011, and a police officer accompanied her to the scene of the crime and then to a hospital, where G.Z.C. was examined by a sexual assault nurse examiner. The nurse examiner then prepared a report, which included statements by G.Z.C. about the assault. However, G.Z.C. later wrote letters to the police and the district attorney in which she claimed to have lied or exaggerated about some of Alvarez-Valencia's conduct in her statements to the nurse examiner.

Anticipating that G.Z.C. would be unavailable to testify at trial, the State filed a pretrial motion to introduce through the nurse examiner her statements about the assault. Over Alvarez-Valencia's objection to the introduction of any of G.Z.C.'s statements to the nurse examiner on Sixth Amendment confrontation grounds, the trial court ruled that some were admissible while others were not.

When G.Z.C. did not testify at trial, the State proceeded to introduce certain of her statements through the nurse examiner in accordance with the court's pretrial ruling. The State also presented evidence that hair found at the crime scene matched G.Z.C.'s DNA profile; photographs of G.Z.C.'s physical injuries, which included bruising on the face, eyes, hip, gluteus and knee; and a video-recorded interview of defendant Alvarez-Valencia himself conducted by police. In the video, Alvarez-Valencia told police that he and G.Z.C. had separated because she was in a new relationship with someone else. He admitted that on October 2, he had borrowed a car and followed G.Z.C to a parking lot near a Dollar Store. There, he confronted G.Z.C. and pulled her out of her own vehicle by her collar

and into his car.  He told police that he then drove to a forested park, where he told G.Z.C. to get out of the car; when she declined, he pulled her out of the car by her hair.  He then took her further into the woods, where he hit her on the face and tied her hands behind her back with a belt.  He then admitted that he put his hand on G.Z.C.'s neck, although he denied choking her.

The defense then presented two letters written by G.Z.C. recanting her statements and admitting to lying because she was angry with Alvarez-Valencia.  G.Z.C. further wrote that while the defendant had hit her, the other allegations about his taking her out of the car by force and sexually assaulting her were false.

During closing, the prosecutor addressed the elements of kidnapping and pointed to both G.Z.C.'s and the defendant's statements as evidence of guilt.  With regard to the element that the defendant transported the victim from one place to another, the prosecutor stated:

> I don't think that's an issue …. The defendant says it.  She says it.  Everyone says it.  He transported her from the dollar store parking lot to the arboretum….He said he opened the driver's side door, grabbed her, and pulled her out of the car … [he] got her into the car [he] was driving … He was taking her.  Both had cars …. [They [w]ent to this park ….

(Trial Tr. (dkt. # 8-13) at 20, 25)).  The prosecutor also noted that Alvarez-Valencia had admitted pulling G.Z.C. out of the car by her hair when she refused to exit the vehicle at the arboretum and forcibly taking her from the parking lot further into the park.  (*Id*. at 25).

Addressing the evidence concerning whether Alvarez-Valencia transported G.Z.C.

3

by force and without her consent, the prosecutor again relied on both parties' statements that: Alvarez-Valencia pulled G.Z.C. out of her car at the dollar store and put her into his vehicle; Alvarez-Valencia pulled G.Z.C. by her hair at the arboretum; and Alvarez-Valencia physically assaulted G.Z.C. as he took her deeper into the arboretum. He further noted that the physical evidence provided corroboration of the parties' struggle. (*Id*. at 20-25). Finally, the prosecutor drew on Alvarez-Valencia's *own* statements to prove defendant's intent to kidnap G.Z.C.:

> [Alvarez-Valencia] planned to drive her—his own statement—he planned to drive her someplace she had never been to beat her and scare her. He found this place, which he looked at and said it looked like a good place for her to get scared . . . [W]hy is this a good place for her to get scared? Because she's alone. She's in private. Officer Helbach testified that even if anyone was able to hear you scream, it was this kind of maze, this labyrinth to get out there.

(*Id*. at 23.) In particular, the prosecutor pointed to Alvarez-Valencia's admission "that he binds her in this location." (*Id*. at 24).

After the jury found Alvarez-Valencia guilty of kidnapping (and not guilty on all remaining counts), he argued to the Wisconsin Court of Appeals that (1) the statements made by G.Z.C. to the sexual assault nurse examiner were testimonial in nature and (2) the trial court erred in allowing their admission into evidence. (Br. of App. of Def.-App. (dkt. # 8-2) 12). Without deciding, the court of appeals assumed that the statements were testimonial, but found that their admission was harmless error because it was "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." (Ct. App. Op. (dkt. #8-5) 2-3.) In particular, the Wisconsin Court of Appeals noted that Alvarez-Valencia had essentially admitted all of the elements of the kidnapping

4

charge in his recorded statement:

> Alvarez-Valencia's admission that he pulled G.Z.C. from the car by her hair, after she refused to get out, and took her from the car to deeper within the woods, when combined with the DNA evidence obtained from the crime scene and the physical evidence of G.Z.C.'s injuries, was strong evidence that Alvarez-Valencia carried G.Z.C. without her consent from one place to another by force. *See* Wis. Stat. § 940.31(1)(a). As to the final element of kidnapping—that Alvarez-Valencia did these things with the intent to hide G.Z.C. or hold her against her will—his own admission that he took her deep into a wooded area and tied her hands behind her back with his belt, despite the fact that G.Z.C. did not want to get out of the car, demonstrates an intent to hold G.Z.C. against her will.

(*Id.* at 4.) Even excluding "the statements from G.Z.C. to the SANE nurse," the Wisconsin Court of Appeals concluded "that the overwhelming evidence . . . would have convinced the jury to convict Alvarez-Valencia and that, therefore, any error by the circuit court in admitting G.Z.C.'s statements was harmless." (*Id.*) Thereafter, the Wisconsin Supreme Court summarily denied Alvarez-Valencia's petition for review. *See State v. Alvarez-Valencia*, 2015 WI 98, 365 Wis. 2d 126, 870 N.W.2d 838.

OPINION

In his petition for relief under 28 U.S.C. § 2254 from this conviction, Alvarez-Valencia reasserts his claims that the trial court's admission of the victim's statements to the nurse examiner violated his Sixth Amendment confrontation rights under *Crawford v. Washington*, 541 U.S. 36 (2004), and that this error was not harmless.

Under AEDPA, habeas relief

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

5

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1). A state court holding of harmless error beyond a reasonable doubt constitutes the adjudication of a claim on the merits for purposes of AEDPA. *Davis v. Ayala*, ⎯ U.S. ⎯⎯, 135 S. Ct. 2187, 2198 (2015); *Jensen v. Clements*, 800 F.3d 892, 899 (7th Cir. 2015).

When assessing the harmlessness of a constitutional error on habeas review, a federal court may grant relief only when it concludes that a constitutional error had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). *See also Fry v. Pliler*, 551 U.S. 112, 120 (2007); *Jones v. Basinger*, 635 F.3d 1030, 1052 (7th Cir. 2011). This standard requires the petitioner to establish that a trial error of constitutional magnitude resulted in "actual prejudice," and it is less onerous than the standard that applies on direct review in state court requiring the prosecutor to prove that a federal constitutional error was "harmless beyond a reasonable doubt." *Brecht*, 507 U.S., at 630-38 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

However, the federal court is to apply *Brecht* independently, "regardless of whether the state appellate court determined that the error was harmless beyond a reasonable doubt under *Chapman*[.]" *Jones*, 635 F.3d at 1052. As the Supreme Court explained in *Ayala*, 135 S. Ct. at 2198, "the *Brecht* standard 'subsumes' the requirements that § 2254(d)

6

imposes when a federal habeas petitioner contests a state court's determination that a constitutional error was harmless under *Chapman*." (citing *Fry*, 551 U.S. at 120)). In other words, "[i]f a trial error is prejudicial under *Brecht*'s standard, a state court's determination that the error was harmless beyond a reasonable doubt is necessarily unreasonable." *Ayala*, 135 S. Ct. at 2211 (J., Sotomayor) (dissenting); *see also Jensen*, 800 F.3d at 908 ("Because Jensen satisfies the *Brecht* standard, he necessarily satisfies the AEDPA standard of an unreasonable application of the *Chapman* harmless error standard.") (citing *Ayala*, 135 S. Ct. at 2198).

*Brecht*'s harmless error standard is satisfied when a reviewing judge "is in grave doubt about whether" the error is harmless -- that is, when "the matter is so evenly balanced that [a judge] feels himself in virtual equipoise as to the harmlessness of the error." *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995). Put differently, when a federal court is in equipoise as to whether an error was actually prejudicial, it must "treat the error, not as if it were harmless, but as if it affected the verdict (i.e., as if it had a 'substantial and injurious effect or influence in determining the jury's verdict')." *O'Neal*, 513 U.S., at 435.

In a confrontation clause case, the court considers a number of factors to determine whether the error had a substantial and injurious effect on the jury's decision. *Jensen v. Clements*, 800 F.3d 892, 904 (7th Cir. 2015). These factors include: (1) the importance of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of corroborating or contradicting evidence; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case. *Id.*

7

*Jensen* involved a letter written by the defendant's wife, Julie, two weeks before her death from ethylene glycol poisoning, stating that she would never commit suicide and accusing her husband of killing her if anything happened to her. The State maintained at trial that Jensen killed his wife and framed it to look like suicide. Jensen's defense was that his wife, depressed, and unhappy in marriage, committed suicide and made it look like her husband had killed her. A key piece of evidence at trial was Julie's handwritten letter. *Id*. at 894-95. Before the Seventh Circuit Court of Appeals, there was no dispute that the admission of the letter violated the defendant's confrontation rights under the Sixth Amendment. *Id*. at 899. Instead, as here, the main issue was whether the admission of the letter was prejudicial. In holding that it was, the Seventh Circuit noted that Julie's "letter from the grave" had played a key role in the case from the outset: twelve witnesses (including five experts) had testified about it; the prosecution had emphasized it in its closing; and the evidence of guilt was "all circumstantial and subject to more than one interpretation." *Id*. at 905–06. Accordingly, the Seventh Circuit concluded that the admission of the letter had a "substantial and injurious effect" on the verdict. *Id*. at 908.

The same cannot be said of G.Z.C.'s out-of-court statements here. To prove that petitioner kidnapped G.Z.C., the State was required to prove that petitioner (1) carried G.Z.C. (2) without her consent (3) from one place to another place (4) by force or with the threat of force (5) with the intent to hide her or hold her against her will. Wis. Stat. § 940.31(1)(a). Moreover, forcing the victim to move satisfies the "carries" element of the kidnapping statute. *State v. Wagner*, 191 Wis. 2d 322, 328-29, 528 N.W. 2d 85 (Ct. App. 1995).

8

The prosecution's strongest evidence of kidnapping came not from G.Z.C.'s purported statements to the nurse examiner, but from the recorded interview of petitioner. In the interview, petitioner admitted that he pulled G.Z.C. by her collar from her car in the dollar store parking lot, transported her from the dollar store parking lot to the arboretum, and then, after she refused to exit the vehicle, pulled G.Z.C. by her hair out of the vehicle and into a secluded area in the woods. The petitioner also admitted hitting G.Z.C. and tying her hands behind her back, as well as admitted his intent to take G.Z.C. somewhere she had never been before to scare her. Thus, by petitioner's own admission, he (1) carried G.Z.C. (2) and without her consent (3) from one place to another (4) by force (5) with the intent against her will, including pulling her out of his car by the hair and dragging her into the woods, where he proceeded to tie her hands behind her back with a belt and slap her.

Moreover, petitioner's confession was corroborated with other evidence. Most powerfully, Officers Nieves Reyes and Helback testified that after reporting the crime, G.Z.C. took them into a very heavily-wooded, isolated area in the arboretum woods, corroborating petitioner's admission that he transported G.Z.C. from one place to another in order to scare her. Photographs of G.Z.C.'s injuries and medical testimony further corroborated petitioner's admission that he hit G.Z.C. in the face during the encounter. In addition, the prosecutor introduced evidence of a significant amount of G.Z.C.'s hair found at the arboretum by the investigating officers, which was consistent with petitioner's admission that he pulled G.Z.C.'s hair at one point.

Thus, the State's case against petitioner on the kidnapping count was very strong, proven largely by his own confession and corroborating physical evidence, which is a far cry from *Jensen*, where the defendant maintained his innocence and, but for the disturbing "letter from the grave" written by his deceased wife, the circumstantial evidence introduced at his trial arguably supported his theory that his wife had committed suicide and framed him for murder.

To be sure, G.Z.C.'s statements to the sexual assault nurse examiner provided important corroborating evidence, and the prosecutor referred to those statements during his closing. However, G.Z.C.'s statements pertaining to the elements of kidnapping were unquestionably cumulative of petitioner's own admissions. Moreover, the credibility of G.Z.C.'s statements to the nurse examiner was cast into doubt by her later recantations, which the jury was also allowed to hear.[2] Given the cumulative and dubious nature of G.Z.C.'s statements, the court finds it implausible that they substantially affected the jury's verdict. The jury's verdict confirms this finding, having convicted petitioner only on the kidnapping count, while acquitting him on all other counts. Notably, petitioner did *not* admit to sexually assaulting G.Z.C., which formed the basis for count 2, and he did *not* admit to strangling or choking her, which formed the basis for counts 3 and 4. Instead, counts 2 through 4 depended on the jury crediting G.Z.C.'s statements to the sexual assault nurse examiner, showing that the jury did *not* convict him on the basis of her purported statements, but rather on the petitioner's confession to the police.

---

[2] Of course, the trial court would have been unlikely to admit these recantations had it not allowed the State to introduce G.Z.C.'s statements to the nurse examiner.

Even assuming the state trial court erred in allowing introduction of G.Z.C's out-of-court statements to the sexual assault nurse examiner, therefore, this court is unable to find that error had a substantial and injurious affect or influence on the jury's verdict. It follows that petitioner cannot establish that the state court of appeals unreasonably applied *Chapman* in finding that the error was harmless, and he is not entitled to federal habeas relief.[3]

The last issue the court must consider is whether to issue a certificate of appealability of this final order adverse to the petitioner. See 28 U.S.C. § 2253(c)(2); Rule 11 of the Rules Governing Section 2254 Cases. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). To make a substantial showing, petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation omitted). Here, given petitioner's admissions to police, the corroborating evidence, the unlikely impact of the admission of G.Z.C.'s later-recanted statements, and the jury's ultimate verdict, no reasonable jurist would debate that petitioner has failed to prove the admission of these

---

[3] As a result, the court need not address petitioner's argument that the Wisconsin Court of Appeals erroneously applied a sufficiency-of-the-evidence test in affirming the conviction, rather than a harmless error test. *See Richardson v. Griffin*, 866 F.3d 836, 844-45 (7th Cir. 2017) (petitioner who showed that state court erred by unreasonably applying *Chapman*'s standard still had to show actual prejudice under *Brecht* in order to obtain habeas relief).

statements resulted in "actual prejudice" under *Brecht*. Accordingly, no certificate shall issue.

ORDER

IT IS ORDERED that petitioner Jorge Alvarez-Valencia's application for federal habeas relief (dkt. # 1) is DENIED and this case is DISMISSED with prejudice. A certificate of appealability under 28 U.S.C. § 2253(c)(2) is also DENIED.

Entered this 28th day of April, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge